IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE E.,[1]

          Plaintiff,                                                                  Civ. No. 6:17-cv-02037-MC

       v.                                                                                         OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying her

application for social security disability insurance benefits. This court has jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c)(3). On June 4, 2014, Plaintiff filed an application for benefits,

ultimately alleging disability as of January 22, 2014. After a hearing, the administrative law

judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act. Tr. 13-26.[2]

Plaintiff argues the ALJ erred in finding that she did not meet or equal listing 1.04, in finding her

less-than fully credible, and in rejecting certain lay witness testimony. Because the

Commissioner's decision is based on proper legal standards and supported by substantial

evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

As relevant here, the ALJ found Plaintiff suffered from cervical degenerative disc disease and lumbar degenerative disc disease. Tr. 16. There is no question that these qualify as severe impairments. Plaintiff has suffered from chronic pain in her lower back since 1997 Tr. 190. Around that time, Plaintiff also began suffering from neck pain. Tr. 286. Objective medical imaging results confirmed the impairments, including evidence of nerve root compression. Plaintiff underwent multiple surgeries over two decades in various attempts at resolving the impairments or at least improving Plaintiff's quality of life. The final surgery, in January of 2014, was a cervical fusion at C3-C7. Plaintiff alleges that date is her disability onset date.

Initially, Plaintiff and the surgeon, Dr. Angeles, deemed the surgery a success and Dr. Angeles released Plaintiff to return to work. After roughly six weeks back at work, Plaintiff's condition deteriorated to the point Plaintiff had to quit her career as a tobacco company sales representative. Plaintiff spent the next 18 months or so attending appointments with various physicians, physical therapists, nurse practitioners, and a chiropractor. Generally speaking, outside of a few weeks of improvement following steroid injections, Plaintiff's condition during this time neither improved nor regressed. Instead, Plaintiff generally complained of chronic pain.

In February 2016, Plaintiff began working part-time at her chiropractor's office. For the next year, through the date of her hearing before the ALJ, Plaintiff worked approximately 20 hours per week performing clerical office tasks. Tr. 468. With the exception of three months, Plaintiff's monthly earnings during that year where above the presumptive limit for substantial gainful activity under the Act. Tr. 16, 158.

At step one, the ALJ found Plaintiff engaged in substantial gainful activity beginning in March of 2016.[3] Tr. 16. Therefore, the ALJ focused on the roughly two-year time period between the alleged onset date of January 2014 and March 2016. Tr. 18. At step three, the ALJ determined Plaintiff's spinal impairments did not meet or medical equally the severity of listing 1.04. Tr. 17. The ALJ then determined Plaintiff had the RFC to perform light work with several additional limitations discussed below. As noted, Plaintiff argues the ALJ erred in finding Plaintiff did not meet or medically equal listing 1.04. Additionally, Plaintiff argues the ALJ erred in finding Plaintiff could perform limited light work on a sustained basis. Generally, Plaintiff argues the evidence demonstrates Plaintiff is limited to, at best, intermittent sedentary activity. I address each argument in turn.

**1. Listing 1.04**

Listing 1.04 covers disorders of the spine:

**1.04 Disorders of the spine** (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthia, resulting in the need for changes in position or posture more than once every 2 hours[.]

---

[3] If a claimant is performing substantial gainful activity, the regulations require the ALJ to find the claimant not disabled at step one. 20 C.F.R. § 404.1520(a)(4)(i).

20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ specifically mentioned listing 1.04 and concluded Plaintiff did not meet or equal the listing at step 3.[4] Tr. 17. The ALJ, however, did so in a somewhat conclusory fashion, with little explanation in the step 3 portion of the findings as to why Plaintiff's combination of impairments did not medically equal the listing. The ALJ's failure to delve extensively into the medically equals analysis is perhaps explained by the fact that Plaintiff never mentioned this argument below. *See* Tr. 234-35 (alerting ALJ that Plaintiff's theory of the case is that Plaintiff is unable to perform full-time activity at a sedentary level and neither mentioning listing 1.04 nor arguing that Plaintiff medically equals the listing); *see also* Tr. 139-40 (same); *see also* Tr. 32-53 (transcript from hearing where Plaintiff does not mention listing 1.04 or argue her combination of impairments medically equals any listing).

To meet a listing, the claimant must demonstrate both a diagnosis of a listed impairment and that the impairment results in the findings described in the listing. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990) (noting that while regulations require diagnosis, Social Security Ruling 83-19, at 90 (Jan. 1983) provides that "an impairment *meets* a listed condition 'only when it manifests the specific findings described in the set of medical criteria for that listed impairment.'"). Listing 1.04A requires findings of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

Plaintiff acknowledges she lacks a positive straight-leg raising test. Additionally, the ALJ expressly noted the record demonstrated Plaintiff did not experience motor loss. Tr. 19 (noting April and August 2014 exams revealed Plaintiff had normal motor strength in extremities); *id.* at

---

[4] The agency reviewing physicians also expressly noted they considered listing 1.04 in concluding Plaintiff could perform light work. Tr. 60, 73.

19-20 (noting that although Plaintiff reported weakness in her legs in October 2014, on examination "Lower extremity strength was 5/5 in all major muscle groups."); *id.* at 21 (noting October 2015 neurological examination revealed motor strength of 5/5 throughout). Although the ALJ mentioned these findings when discussing Plaintiff's RFC, the findings relate to listing 1.04A's requirement of motor loss. After discussing two years of medical evidence, the ALJ found that, "despite abnormalities as shown on imaging studies of the lumbar and cervical spine, straight leg raises were negative; the claimant's gait was generally normal; *and strength in the upper and lower extremities was typically normal.*" *Id.* at 22 (emphasis added). Although Plaintiff points to isolated evidence of slight motor loss, such as a June 2015 note from Katrina Cypcar, PA-C of 4/5 motor strength in Plaintiff's right upper extremity, the ALJ looked at the overall record, with numerous instances of full motor strength over several years, and concluded Plaintiff's impairments did not result in motor loss.[5] Stated another way, the ALJ resolved somewhat conflicting evidence in the record. Substantial evidence supports the ALJ's conclusion. *See* Tr. 256, 278, 282, 297, 312, 354, 364, 394, 440, 447 (examinations indicating Plaintiff experienced no motor loss). Therefore, the ALJ did not err in concluding Plaintiff did not meet listing 1.04A at step three.

Plaintiff argues she meets listing 1.04B because the record contains evidence of a diagnosis for spinal arachnoiditis, confirmed by appropriate medically acceptable imaging. In support, Plaintiff points to an April 16, 2016 MRI showing "slight clumping, as well as slight peripheral localization and these findings *may indicate mild chronic arachnoiditis.*" Tr. 405. The regulations, however, require a specific finding, as opposed to an inference, of a listed condition. *Marcia*, 900 F.2d at 175 n.3 ("An inference is not a specific finding as required by the regulations."). Therefore, the ALJ did not err in concluding Plaintiff did not meet listing 1.04B.

---

[5] The ALJ pointed out PA-C Cypcar's reference to slight motor loss. Tr. 21.

Plaintiff also argues that she equals listing 1.04 or, in the alternative, that *Marcia* requires remand because the ALJ failed to adequately explain the finding that Plaintiff does not equal the listing. "Equivalence is determined on the basis of a comparison between 'the symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records 'with the medical criteria shown with the listed impairment.'" *Marcia*, 900 F.2d at 176 (quoting 20 C.F.R. § 404.1526). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (internal quotations omitted).

In *Marcia*, the ALJ's finding as to equivalence consisted of: "The claimant has failed to provide evidence of the medically determinable impairments that *meet or equal the Listings* to Subpart P of Regulation 4 or the duration requirements of the Act . . . ." *Marcia*, 900 F.2d at 176. The Ninth Circuit reversed, "hold[ing] that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments. Applying this standard to the findings in this case, we find that the statement that Marcia did not equal the listing was insufficient." *Id.* As discussed above, the ALJ here specifically found that "despite abnormalities as shown on imaging studies of the lumbar and cervical spine, straight leg raises were negative; the claimant's gait was generally normal; *and strength in the upper and lower extremities was typically normal*." Tr. at 22 (emphasis added). This finding, supporting by

substantial evidence in the record, demonstrates Plaintiff's impairments did not result in motor loss and, therefore, were not equal in severity to all criteria in listing 1.04.

Rather than attempt to demonstrate why one unlisted impairment is equal in severity to the criteria in listing 1.04, Plaintiff argues that the overall functional limitations from her combined impairments are as severe as the listed impairment. In her brief, Plaintiff argues:

> Although [Plaintiff] contends her impairments meet Listings 1.04A and 1.04B, assuming *arguendo* that they do not, then they do at least *equal* Listing 1.04A and/or 1.04B. [Plaintiff] has both a cervical spine disorder and a lumbar spine disorder that, independently, are of listing-level severity. *Even if all elements of each listing are not present, when the combined impairments are considered, they are medically more limiting than the requirements of Listing 1.04A or Listing 1.04B, standing alone.*

Pl.'s Opening Br. 20-21 (final emphasis added), ECF No. 10.

The Supreme Court, however, rejected such an overall functional limitation argument. *See Zebley*, 493 U.S. at 531 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."). "Since *Zebley*, [the Ninth Circuit has] followed this approach, requiring claimants to equal each criterion of [the Listing] rather than relying on overall functional impact." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The Supreme Court discussed the reasoning behind requiring a claimant to equal the criteria, as opposed to the severity, of a listing:

> The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity. The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Zebley*, 493 U.S. at 532 (internal quotations and citations omitted).

It may be that Plaintiff, who suffers from lumbar *and* cervical degenerative disc disease, is more limited than one suffering from only one of the impairments. But though that may be true, it does not factor into a step three equivalency analysis. Plaintiff does not and, as discussed above, cannot, demonstrate her combined impairments equal the motor loss criteria of listing 1.04. Additionally, she makes no argument that the combination of her impairments somehow equals a positive straight leg raise test or acceptable "confirmation" of spinal arachnoiditis. Therefore, Plaintiff's step three argument fails.

### 2. The ALJ's Adverse Credibility Determination

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: that she is able to change positions from sitting to standing as needed; that she is prohibited from overhead reaching bilaterally; that she can frequently, but not constantly, handle, finger, and feel bilaterally; and that she not drive as part of her job duties. Tr. 17. This finding contrasting with Plaintiff's self-reported limitations. Essentially, Plaintiff argues that she is limited to no more than her current 20 hour per week receptionist work and that the ALJ erred in finding she could work 40 hours per week in limited light work on a sustained basis.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other

treatment for the symptoms; (3) whether the claimant fails to follow, without
adequate explanation, a prescribed course of treatment; and (4) whether the
alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). The ALJ in this case

supported her credibility determination with references to several of the above factors:

> As discussed below, the overall medical record for the approximately two-year
> period from the date of the claimant's cervical surgery through February 2016
> (when she returned to work) supports a finding that the claimant had limitations
> due to neck pain, back pain, and upper extremity symptoms, but was nonetheless
> capable of a reduced range of light work as set forth above. Two months after her
> surgery, the claimant was released by her treating surgeon to light work. While
> the claimant's symptoms worsened after she returned to her apparently non-light
> job, the medical record shows that treatment of pain during the period at issue was
> essentially conservative and that such treatment was at least somewhat helpful.
> Moreover, the longitudinal medical record does not contain objective findings of
> abnormality that support disabling limitations or that support greater limitations
> set forth above.

* * * *

> The above limitations are consistent with or even more restrictive than the treating
> surgeon's release in April 2014, and much less strenuous than the work that the
> claimant in fact returned to. As noted above, this work involved driving 1,000
> miles per week and lifting heavy items. The claimant testified that this job caused
> problems because she had to drive long distances, climb ladders, and do heavy
> lifting; all of these have been addressed by the residual functional capacity
> limitations determined herein. While the claimant ultimately could not sustain
> such apparently heavy work, the record as a whole does not support her inability
> to do any work at all. Indeed, the claimant returned to part-time work in February
> 2016, with earnings typically above substantial gainful activity. Her ability to start
> working at that time does not appear to be related to medical improvement, as the
> claimant testified as to little improvement since her surgery and the medical
> record shows ongoing treatment of pain consisting of chiropractic care, pain
> medications, and epidural steroid injections. The objective medical evidence
> during the period at issue was not fully consistent with a disabling degree of
> limitation. For example, despite abnormalities as shown on imagine studies of the
> lumbar and cervical spine, straight leg raises were negative, the claimant's gait
> was generally normal; and strength in the upper and lower extremities was
> typically normal. In addition, I have considered evidence of the claimant's
> activities of daily living, which were fairly robust. While the claimant testified
> that she was able to do such activities because she was able to take breaks and sit
> or lie down when she needed to, I find that the normal breaks and a sit/stand at
> will option would have adequately accommodated the claimant's need for breaks
> and changing positions if limited to light level work.

Tr. 19, 22-23 (internal citations omitted).

Dr. Angeles performed Plaintiff's January 2014 fusion surgery. The ALJ gave great weight to Dr. Angeles's April 2014 release of Plaintiff to full-time work with a 20-pound weight restriction. Tr. 23. The ALJ noted that "Dr. Angeles was the claimant's treating surgeon, and was thus familiar with the claimant's impairment, recovery, and functioning." Tr. 23. An ALJ may assign greater weight to the opinion of a specialist. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

Three months following the surgery, Dr. Angeles noted that Plaintiff had "minimal" neck pain, exacerbated by a recent physical therapy session. Tr. 282. Plaintiff was improving and was happy with the results of her surgery. Tr. 282. "[Plaintiff] is healing well with significant improvement from her preop pain level. She will be released to fulltime work with 20 pound weight restriction. F/U 3 months." Tr. 284. Three weeks later, Plaintiff followed up with Dr. Angeles, reporting an increase in symptoms following her return to work. Tr. "She is happy with results of her surgery but since she has been back to work her symptoms have come back." Tr. 278. "[Plaintiff] is having exacerbation of her pain after returning to work for 2 weeks. She drove 1000 miles/week and lifts heavy. . . . She feels that at this point, she cannot return to her work." Tr. 280. Three months later, Dr. Angeles reviewed X-rays and confirmed the fusion "graft incorporating both superiorly and inferiorly and fusion solid." Tr. 301. Although Plaintiff continued to report back and neck pain, Dr. Angeles reported Plaintiff "is overall feeling better after she quit[] her job and moved to [B]end. She continues to mostly have problems at night." Tr. 299. Dr. Angeles concluded, "Overall, the patient appears to be recovering from surgery as expected. Routine monitoring recommended." Tr. 299.

The ALJ noted that the job Plaintiff returned to for six weeks was much heavier than Plaintiff's current successful clerical work, and heavier than that allowed under Plaintiff's RFC. Two months before surgery, Plaintiff reported driving, walking, and lifting aggravated her symptoms. Tr. 286. Yet Plaintiff's job as a tobacco sales representative consisted largely of driving, lifting, and reaching to hang signs. Tr. 44. Dr. Angeles noted Plaintiff aggravated her symptoms after driving 1000 miles in a week and lifting heavy objects. Tr. 280. At the time Plaintiff returned to work, she "lifted 30 lbs on average per day all day long." Tr. 163. She frequently lifted 25 pounds. Tr. 163. She worked 10-14 hours per day, 5 to 6 days per week. Tr. 171. At the hearing, the ALJ asked if Plaintiff could have performed light work (as released to by Dr. Angeles) after surgery:

> Q. I note that you went back to work after your surgery and they put you back to heavy work when your doctor said you should only do light work. Had you gone back to lighter work would you have been able to continue to work longer?
>
> A. No.
>
> Q. Why not?
>
> A. Not with that company.
>
> Q. I'm not talking about that company. I'm sure [your attorney] has told you that the issue isn't whether you can do your old jobs or jobs you used to do. The issue is whether you can do any job so let's assume that instead of going back to the job that you did you went back to a receptionist job right after surgery. Could you have done that?
>
> A. Not at that time.
>
> Q. And why not?
>
> A. Because of the pain I was in.
>
> Q. What's changed that's allowed you to go back to work?
>
> A. I'm still having a hard time.
>
> Q. But you're doing it so what's changed or could you have done the same thing all the way back to surgery?

A. I don't believe that I could have.

Tr. 40-41.

The ALJ found that Plaintiff's ability to successfully work for one year up to the hearing "does not appear to be related to medical improvement, as the claimant testified as to little improvement since her surgery and the medical record shows ongoing treatment of pain consisting of chiropractic care, pain medications, and epidural steroid injections." Tr. 22. This finding is supported by substantial evidence in the record. Plaintiff testified that although her symptoms vary, she would not say her condition improved between 2014 and the February 2017 hearing date. Tr. 44. Plaintiff testified the only reason she could perform her current job was because her employer helps her "with my disability and allow[s] me to get up when I need to get up and walk when I need to walk and sit when I need to sit." Tr. 44. But the ALJ specifically required that any job include a sit/stand option. Tr. 17.

The ALJ provided "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

Plaintiff stated that her condition did not improve between 2014 and 2017. Yet she successfully performed substantial gainful activity for nearly one year during the time period she claimed to be disabled. The ALJ pointed out that Plaintiff's unsuccessful return for six weeks to a job requiring heavy lifting and constant driving—activities that exacerbated her symptoms— indicated she was capable of light work with additional limitations accounted for in the RFC; i.e.,

providing a sit/stand option in light work with no driving. In making this determination, the ALJ gave great weight to the surgeon who noted Plaintiff's improvement and signed off on her return to light work. Additionally, although Plaintiff continued to complain of severe pain in the three years following surgery, she also complained of such pain during the time she successfully performed substantial gainful activity. *See* Tr. 440 (April 2016 appointment with Dr. Yundt where Plaintiff complained of "constant pins and needles in the bilateral lower extremities," rated her pain as 9/10 and noting she had been through chiropractic care with no improvement); Tr. 426, 425 (December 2016 chiropractic notes stating Plaintiff "has had an exacerbation. These are episodic marked deterioration of the patient's condition due to acute flareups of the presenting conditions."); Tr. 424 (July 2016 chiropractic note stating same): Tr. 420 (May 2016 chiropractic note stating same); Tr. 419 (March 2016 chiropractic note stating same).

As noted, the ALJ "may consider a wide range of factors in assessing credibility." *Ghanim*, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). Here, the ALJ pointed to the fact that Plaintiff's surgeon released her to full-time light duty work, that Plaintiff returned to her prior job with much greater physical requirements, that Plaintiff's condition generally did not improve, and that Plaintiff successfully performed substantial gainful activities for nearly a year in determining Plaintiff was not fully credible as to the extent of her limitations. The ALJ did not reject all of Plaintiff's testimony regarding her limitations, but instead determined Plaintiff could perform light work with a sit/stand option provided she neither drive nor reach overhead. The ALJ's determination is supported by substantial evidence in the record.

### 3. Lay Witness Testimony

Plaintiff argues the ALJ erred in rejecting the lay witness testimony from her husband and her chiropractor/employer. An ALJ must provide "germane reasons" for rejecting lay

testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

On February 15, 2017, Plaintiff's husband submitted a third-party functional report. Tr. 233. The report generally aligned with Plaintiff's self-reported limitations. To the extent the report conflicted with the RCF, the ALJ gave the report little weight. Although the ALJ provided several reasons, she concluded, "Notably, [Plaintiff's husband] failed to even mention in his February 2017 [report] that [Plaintiff] was, in fact, working." Tr. 24. That a third party submits a report in support of a claim for disability without mentioning that, for nearly an entire year, the claimant has in fact successfully performed substantial gainful activity qualifies as a germane reason for giving the report little weight.

On February 21, 2017, Kyle Gillett DC, Plaintiff's employer and chiropractor signed a letter outlining his thoughts on Plaintiff's limitations. Mr. Gillett opined that Plaintiff:

> is both a patient of mine and a part-time employee at my chiropractic clinic. She has worked for me for about one year and works approximately 20 hours a week. She is an asset to our clinic as she is a very dedicated and hard worker. It is my professional opinion, however, as both her chiropractor and her employer that she could not work much more than she is already working at the clinic. She is in pain a fair amount of the time and some days she comes in and it is evident that she is in excruciating pain. We have had to work around some of her limitations. The job is clerical office work and essentially sedentary, but she also spends time

standing and walking while working. Her freedom to get up and move around aids in her ability to deal with the pain. She is very prone to recurrent flare ups of her back condition. I have often had to provide chiropractic treatments to try and ease her pain. She has fallen down several times recently. Again, due to her symptoms it appears that she would not be [able] to sustain more hours of work than she is already performing.

Tr. 468.

The ALJ gave partial weight to Mr. Gillett's opinion:

Generally, his statements indicate that the claimant is capable of performing her current level of work and that she does so successfully. While he feels that the claimant is unable to work full-time, the claimant's earnings have been typically above substantial gainful activity. Moreover, Mr. Gillett is not qualified to provide vocational opinions. I have accounted to some extent for Mr. Gillett's statements by finding that the claimant needs to be able to change positions from sitting to standing, as needed.

Tr. 23-24.

The ALJ provided germane reasons for rejecting Mr. Gillett's opinion that Plaintiff could work no more than 20 hours per week. The ALJ noted that Plaintiff was an asset to the clinic and a hard worker. Like Mr. Gillett, the ALJ provided Plaintiff with a sit/stand option. As noted, the ALJ also prohibited Plaintiff from working any job requiring overhead reaching. Taken along with the ALJ's reasoning, discussed above, outlining Plaintiff's ability to sustain substantial gainful activity despite any medical improvement in her condition, along with Dr. Angeles's recommendation releasing Plaintiff to light work following a successful fusion surgery, the ALJ did not err in rejecting Mr. Gillett's opinion that Plaintiff could not work more than 20 hours per week.

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The

Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of May, 2019.


_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge